[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was brought by the Plaintiff wife against the Defendant husband for dissolution of their marriage on the ground of irretrievable breakdown. The parties were married on May 16, 1981 in South Salem, New York. There are four minor children issue of the marriage: Jackson Davis Kiniry, born October 8, 1982, Shawn Emilie Kiniry, born April 22, 1985, Leigh Crawford Kiniry, born August 20, 1988 and Merrill Elizabeth Kiniry, born July 17, 1990.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for reliefs, proposed orders and trial memoranda. Based upon the evidence the court makes the following findings. This action was commenced on February 20, 1998. The court has jurisdiction and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
Both parties are 42 years of age and in good health. Both received their undergraduate degrees from the University of Connecticut, the Plaintiff in 1980 and the Defendant in 1981. Thereafter, after a short period as an employee, the Plaintiff became a partner in an executive search firm in New York City. The Defendant, in 1981, started his employment career on Wall Street as an over the counter clerk. Both parties achieved success in their fields in a relatively short period of time. The Plaintiff became a successful co-owner of the executive search firm, earning from $250,000 to $300,000 per year from the mid 1980s until 1990 when she ceased work at the time of the birth of her fourth child. The Defendant earned approximately $1,000,000 per year in 1992 and 1993, $445,000 in 1994 and thereafter from $700,000 to more than a million and half dollars per year. CT Page 10316
The parties began this marriage with little in financial assets. They quickly began to live an affluent style of life, regularly spending more than the substantial amounts they earned. They moved from New Jersey to New Canaan in 1987, purchasing a home for $1,750,000. In 1993, in an effort to reduce their enormous amount of debt, this home was sold for $1,825,000 and replaced with another New Canaan home for $1,400,000. This change did not resolve the financial problems. To pay income taxes in 1995, it was necessary for the Defendant to liquidate pension funds and in 1996, the Plaintiff sought employment to generate additional income. In 1996 things took a turn for the better when the Defendant signed a two year employment agreement with Deutsche Bank for $1,200,000 per year.
At the time of the move to New Canaan, and thereafter, problems in the parties' marital relationship escalated. These related to and were compounded by, in varying degrees, financial pressures, work pressure, parenting obligations for four children, and the Defendant's temper, drinking, and life style. At a point in 1997, when survival of this marriage was in doubt but after the Defendant had initiated honest and sincere efforts to improve the situation, a 28-year old tennis pro from their country club was permitted to use a spare room for the summer in their home. The Defendant immediately became concerned about an apparent relationship developing between the Plaintiff and this guest. He advised his wife that the pro's presence was upsetting and that the amount of attention she was paying to him was embarrassing. The Defendant's concern proved well founded. The Plaintiff had an intimate relationship with him which has continued to the present time. Some months after the commencement of this affair, in the summer of 1997, the Defendant began dating another woman and in November 1998 moved out of the family home. Both parties share responsibility for the breakdown of this marriage.
In February 1998, the Plaintiff began this action for divorce. After commencement of this action, and entry of automatic orders, the Defendant made a series of expenditures, including vacations and clothing purchases, of which $30,000 was unreasonable and excessive.
In July 1999, the parties sold their house at 751 Weed Street, New Canaan and placed the net proceeds into an escrow account. Thereafter, the Plaintiff purchased a home at 165 Skyview Lane, New Canaan, using a $410,000 advance on her equitable distribution from their joint account and from the escrow account from the Weed Street sale, and a $600,000 mortgage.
The Plaintiff has a significant earning capacity. At present it is somewhat limited because of time she dedicated to raising her four young children. In January 2000, she resumed her executive search and placement career on a reduced schedule. She presently earns approximately $5000 per CT Page 10317 month. In approximately 5 years, when her youngest child attains high school age she should be able to return to a full schedule with earnings equal or exceeding her prior earnings.
The parties have reached an agreement on issues relating to the care, custody and parenting of the children. In accordance with the agreement, the parties are awarded joint legal custody of the four minor children: Jackson Davis Kiniry, Shawn Emilie Kiniry, Leigh Crawford Kiniry, and Merrill Elizabeth Kiniry. The Plaintiff shall be the primary residential parent, with reasonable, flexible and liberal visitation rights to the Defendant. If the parties are not able to agree on rights and times of access, they shall mediate with Family Relations before bringing this matter before the court.
ORDERS:
The court has carefully considered the criteria set forth in General Statutes §§ 46b-81, 46b-82, 46b-84, and the applicable case law in reaching the decisions reflected in the orders that follow:
 1. The marriage of the parties having broken down irretrievably is hereby dissolved.
 2. Custody of the four minor children shall be as here and before set forth.
3. The Defendant shall continue existing medical coverage for the benefit of the children for so long as he is responsible for their support. Medical expenses for the children that are unreimbursed by insurance shall be paid by the Defendant which is a deviation from the guideline calculations of 87% by the Defendant and 13% by the Plaintiff. This deviation is appropriate as part of a coordination of total family support, and it would be inappropriate and inequitable to follow the guidelines in this situation. The Plaintiff shall be entitled to the continuation of her current coverage under the Defendant's group medical plan, at her expense, for the maximum period allowed by law. The Defendant shall cooperate with the wife's continuation of said coverage under COBRA. Any qualified child care expenses shall be paid in accordance with the support guidelines. CT Page 10318
 4. The Defendant shall pay to the Plaintiff, as unallocated alimony and support, the sum of $40,000 per month from the date of this decision through August 14, 2005. For the following five year period, commencing August 15, 2005 through August 14, 2010, the Defendant shall pay to the Plaintiff, as unallocated alimony and support, $20,000 per month plus an additional monthly amount calculated as follows: for each year, August 15 — August 14, the Defendant shall pay, on earned income above $500,000 for each prior calendar year from salary, commission, and bonus, 25% of said income between $500,000 — 750,000 and 15% of earned income in excess of $750,000.
 Child support guidelines provide for a base support payment of $704 per week. The amount of support exceeds this amount and this deviation is appropriate because the parties' combined income exceeds the maximum applicable limits of the guidelines, because of the financial resources available to the Defendant, and because it is an appropriate part of a coordination of total family support. It would be inappropriate and inequitable to use the guideline figures in this situation.
 Alimony shall terminate upon the earliest of the following events: the death of either parties, the Plaintiff's remarriage, statutory cohabitation or the expiration of 10 years from the date of the decree.
5. Division of Assets:[1]
(a) The Plaintiff shall retain all her right title and interest in and to the property located at 165 Skyview Lane, New Canaan, CT, and she shall have exclusive possession thereof. She shall be solely responsible for and pay the monthly payments for the mortgage, real property taxes and other related expenses as they become due;
(b) The proceeds of the closing of the Weed Street house, presently being held in escrow, shall be divided as follows: 43.5% ($209,398) to the Plaintiff and 46.5% ($271,976) to the Defendant;
(c) The Merrill Lynch account containing the proceeds from the estate CT Page 10319 of Dale Reynolds to the Plaintiff;
(d) The $470,000. balance in the US Trust account shall be divided 41.486% ($194,983) to the Plaintiff and the balance of 58.514% to the Defendant;
(e)The husband's vested and unvested Credit Suisse Stock Awards, including any longevity award, shall be divided 60% to the Plaintiff and 40% to the Defendant if, as, and when received by the Defendant. If the receipt of the same by the Defendant is determined to be taxable then, in such event, the Defendant shall divide the after-tax proceeds (whether cash or stock) in said percentages and pay the Plaintiff said share within 10 days of the receipt;
(f) The parties shall divide equally the Defendant's Deutsche Bank 401(k), Deutsche Bank pension and his Morgan Stanley pension. This division shall be accomplished by way of Qualified Domestic Relations Orders. The Plaintiff shall be responsible for the preparation of the QDRO's with the cost of preparation to be shared equally by the parties. The court shall retain jurisdiction to resolve any disputes with the respect to said QDRO's and this division;
(g) The Defendant shall retain all of his right, title and interest in and to the 1999 Ford Explorer free from any claim of the Plaintiff and all of his right title and interest in his Deutsche Bank stock shares.
6. Life Insurance: The Defendant shall provide life insurance coverage on his life for the benefit of the Plaintiff in the amount of $1,000,000 naming the Plaintiff as primary beneficiary for so long as the Defendant has a duty to pay alimony to the wife. In addition, the Defendant shall provide life insurance on his life for the benefit of his four children in the amount of $2,000,000 for so long as he is obligated to pay support to any of said children. Said policies shall be in full force and effect, and copies provided to the Plaintiff, on or before August 31, 2000. The court will retain jurisdiction over this issue. In the event that said policies are not in effect and/or copies have not been provided to the Plaintiff by said date, the court will hold a hearing on any and all issues related thereto including but not limited to insurability, costs, and the ability to pay.
7. Personal property: The parties have already divided their personal property and household furnishings except for the following as to which the court orders as follows: The Defendant shall have title to and right to possession of his desk, the green leather chair, the Kuhn photo, the Herrand planter and the china settings. The Plaintiff shall have title to and the right to possession of the dining room table and chairs presently CT Page 10320 located at the Skyview Lane residence.
8. Country Club: The Defendant shall transfer all of his right, title and interest in the Woodway Country Club membership to the Plaintiff and the Defendant shall retain his sole interest in the Shuttle Meadow Country Club. The Defendant shall retain all rights he has in future athletic tickets to University of Connecticut sporting events free from any claim of the Plaintiff
9. Attorneys Fees and Liabilities: The Defendant shall pay to the Plaintiff within 30 days of the date of this decision, the sum of $7,664.25 as attorneys fees and expenses incurred by the Plaintiff as a result of his excessive expenditures as previously noted. Except as otherwise provided herein, each party shall be responsible for and shall pay his or her own liabilities, including counsel fees.
HILLER, J.